UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA,

        Petitioner,

v.

UBS AG,

        Respondent.
_____/

**DECLARATION OF INTERNAL REVENUE AGENT JAMES OERTEL**

I, James Oertel, pursuant to the provisions of 28 U.S.C. § 1746, declare:

**1.** I am a duly commissioned Internal Revenue Agent employed in the Small Business/Self-Employed Compliance Division, Western Area, of the Internal Revenue Service in San Jose, California, and have been employed in such capacity since 1986.

**2.** My declaration is based, in part, on personal knowledge, and in part, on information I learned from my review of the IRS files.

**3.** Pursuant to the provisions of 26 U.S.C. § 7602, Treasury Regulation (26 C.F.R.) § 301.7602-1, and IRS Delegation Order No. 25-1, I am authorized to issue and serve IRS administrative summonses (IRS Form 2039), and as a result, I am familiar with the IRS's policies and procedures for issuing such summonses.

13622124.1

## I. **EXAMINATION OF HSIAW'S INCOME TAX LIABILITIES**.

4. In my capacity as a Revenue Agent, I am conducting an examination for the purpose of determining the correct federal income tax liabilities of a U.S. taxpayer, Ching-Ye Hsiaw a/k/a Henry Hsiaw ("Hsiaw"), for the tax years 2006 through 2011.

### A. **Background**.

5. In conducting the examination of Hsiaw's tax liabilities, I learned that he was born in Taiwan. Sometime before 1994, he immigrated to the United States. When Hsiaw opened an account with UBS AG ("UBS") in Switzerland ("Swiss account") in 1994, he stated that he was a U.S. citizen and resided in Los Altos, California.

6. Hsiaw has worked as an expert in the telecommunications industry in the United States. In 1980, he edited a book on telecommunications for the Massachusetts Institute of Technology. By 2001, he was employed as the assistant general manager of NEC Electronics.

7. In 2007, Hsiaw lost his job at a high tech firm. In January 2008, he left the United States and moved to China. His immigration status in China is unknown. In February 2012, Hsiaw told me that he had been working as a consultant for Kebixin in China for approximately two-and-a-half years.

8. Since moving to China, Hsiaw has returned to the United States on at least two occasions for approximately two weeks at a time. His first visit occurred during April through May 2012; his second visit occurred during December 2012 through January 2013.

9. Hsiaw has not shown any intent to return to the United States permanently. For this reason, the IRS has not authorized issuance of a summons to Hsiaw for production of the bank records because enforcement of the summons would be impractical while he remains in

China. In March 2013, I performed an exchange of information request with the People's Republic of China. From that request, I received only three documents pertaining to Hsiaw's China Merchant Bank account.

### B. Hsiaw's Tax Liabilities.

**10.** Prior to the start of my examination of Hsiaw, he had not filed a U.S. income tax return since 2004. In April 2012, during my examination, he filed delinquent returns for 2008 and 2011, showing no U.S. tax due for those years.

**11.** Based on Form W-2 information transmitted to the IRS, Hsiaw earned wages in excess of $100,000 in the United States during 2005, 2006 and 2007. Federal income tax was withheld for each year.

**12.** Based on information that Switzerland disclosed to the IRS under the Convention between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation With Respect to Taxes on Income and pursuant to a settlement of the John Doe summons that the IRS served on UBS in 2008, the IRS learned, *inter alia*, that Hsiaw maintained a bank account at UBS in Switzerland, referred to herein as the Swiss account. See In the Matter of the Tax Liabilities of John Does, Case No. 08-mc-21864 (S.D. Fla.); United States v. UBS AG, Case No. 09-cr-60033 (S.D. Fla.), at Doc. 20, ¶¶ 13-14, and Doc. 32.

**13.** In August 1994, Hsiaw opened the Swiss account, bearing Account No. ****  **2.491, with UBS (formerly, the Union Bank of Switzerland) at its representative office in San Francisco. Hsiaw's Swiss account functioned as a master account that managed his securities account(s) and other related accounts in accordance with the guidelines of the Swiss Bankers Association for a fee.

3

14. When Hsiaw opened his Swiss account in 1994, he executed a "hold mail" agreement, requesting that UBS retain all bank communications to him, including bank statements, in Switzerland and send nothing to him in the United States. He agreed to pay a special fee for this "hold mail" service.

15. On September 15, 2000, in response to UBS's warning about new "Qualified Intermediary" rules that would require it to identify account holders having investments with U.S. source income (*see e.g.*, 26 U.S.C. § 1441), Hsiaw signed a UBS form, stating, in pertinent part, that he "would like to avoid disclosure of [his] identity to the US Internal Revenue Service under the new tax regulations."

16. Thereafter, Christos Bagios ("Bagios"), a UBS private banker whose job through 2005 was to service U.S. clients with undisclosed foreign financial accounts, met with Hsiaw in Palo Alto, California to discuss his Swiss account on February 20, 2001.

17. In November 2012, Bagios pled guilty to tax evasion with respect to the activities that he conducted on behalf of UBS in soliciting, assisting and otherwise facilitating the evasion of tax by U.S. customers through the use of undeclared foreign financial accounts. See United States v. Bagios, Case No. 12-cr-60260 (S.D. Fla.).

18. The UBS records obtained from Switzerland ("UBS Swiss records") reported that the highest balances in Hsiaw's Swiss account (expressed in U.S. dollars ("USD")) during the tax years 2001 through 2003 were, as follows:

| Year | Balance of Hsiaw's Swiss Account (in USD) |
|---|---|
| **2001** | $ 990,351 |
| **2002** | $ 773,011 |

4

| Year | Balance of Hsiaw's Swiss Account (in USD) | |
|---|---|---|
| 2003 | $ -0- | *(Closed in 2002)* |

19.     In March 2002, Hsiaw requested and received a bank check in the amount of $600,066 USD from his Swiss account. Neither UBS nor Hsiaw has produced a copy of the cancelled check to the IRS.

20.     On April 9, 2002, Hsiaw sent Bagios a facsimile from a UBS office in Hong Kong, advising that he had opened a new account in his name at UBS's branch office in Singapore, bearing Account No. **8630 (the "Singapore account"), and requesting that UBS transfer the balance of his Swiss account to his Singapore account, to the attention of the private banking department.

21.     On April 12, 2002, UBS transferred the balance of Hsiaw's Swiss account, totaling approximately $194,356 USD, to his Singapore account, and closed his Swiss account.

22.     The UBS Swiss records that were produced to the IRS did not disclose what happened to the funds, totaling $600,066 USD, that Hsiaw withdrew, via check, from his Swiss account in March 2002. See ¶ 19, *supra*.

23.     In view of the above, I must obtain the relevant bank records pertaining to Hsiaw's Singapore account(s) in order that I may determine his correct U.S. tax liabilities for 2006 through 2011.

24.     After locating Hsiaw in China, I contacted him, via telephone, on February 17, 2012. During that conversation, Hsiaw denied having any foreign accounts. I then informed him of some information contained in account creation documents that he submitted to UBS in

5

Switzerland in 1994. At that point, he admitted to having both the Swiss and Singapore accounts, but stated that both accounts were closed. Specifically, he stated that the Singapore account was closed in 2007 and only had a balance of $100,000 at that time.

25. In September 2012, UBS provided the IRS with a waiver form that, if executed by Hsiaw, would permit the bank to disclose the account records and information located in Singapore to the IRS in a manner that UBS believed would be consistent with its obligations under Singapore's bank secrecy laws.

26. I mailed the waiver form to Hsiaw. He never executed the waiver, and thereafter, refused to speak with me. From September through December 2012, I called Hsiaw several times, but, for most of those calls, he did not answer the phone. On two occasions, he did pick up the phone, but hung up once I identified myself.

## II. IRS ADMINISTRATIVE SUMMONS.

27. On July 1, 2013, in furtherance of the examination of Hsiaw's tax liabilities and pursuant to 26 U.S.C. §§ 7602 and 7609, I, with the approval of my Group Manager, Nicholas Connors, issued an IRS administrative summons (IRS Form 2039), directing UBS to appear at the IRS office located at 51 S.W. First Avenue, Miami, Florida 33130, on July 29, 2013 at 9:00 a.m., to give testimony and produce for examination books, records, papers and other data relating to the tax liability of Hsiaw for the tax periods covering January 1, 2006 through December 31, 2011. See Exhibit "A" for a true and correct copy of the IRS Administrative Summons issued to UBS AG on July 1, 2013, including attachments. The IRS summons primarily seeks the production of records pertaining to Hsiaw's Singapore account(s) for the calendar years 2001 through 2011. See Exh. A, at pp. 5-7, Attachment "B."

**28.**     In accordance with 26 U.S.C. § 7603(a) and at my direction, Internal Revenue Agent Angela Arevalo, who is employed in the Small Business/Self-Employed Division, South Atlantic Area, of the Internal Revenue Service in Miami, Florida, served an attested copy of the summons by delivering it in hand to Janet Castilla, a representative of UBS, at UBS's branch office located at 701 Brickell Avenue, Suite 3250, Miami, Florida 33131, on July 1, 2013 at approximately 12:00 p.m. See Exh. A, at p. 2.

**29.**     In accordance with 26 U.S.C. § 7609(a), Agent Arevalo gave notice of the summons to Hsiaw on July 2, 2013, via registered mail return receipt requested. See Exh. A, at p. 8. The notice, along with a copy of the summons, was sent to Hsiaw at his last known address, Apt. 7-9-F, Friendship Square, 1098 Jianshe Road, Shenzhen, China 518001. See Exh. A, at p. 8. As of the date of this declaration, Hsiaw is now believed to be living at 6009 Shennan Road East, Apartment 19F, Shenzhen Guang Dong, China 518034.

### III. UBS HAS NOT COMPLIED WITH THE IRS SUMMONS.

**30.**     On or before July 29, 2013, UBS, by and through its counsel, requested an extension of time to comply with the IRS summons. The IRS granted UBS's extension request.

**31.**     Thereafter, by letter dated August 5, 2013, UBS's counsel, John F. Savarese, Esq. and Ralph M. Levene, Esq. of Wachtell, Lipton, Rosen & Katz, advised Jon Feldhammer, Esq. of IRS Office of Chief Counsel, that UBS could not comply with the summons because, in the absence of a waiver from Hsiaw, it is prohibited by Singapore's bank secrecy laws from disclosing the summoned bank records that relate or pertain to Hsiaw's Singapore account(s).

**32.**     In the August 5th letter, UBS further advised that it had reviewed all its records in Switzerland and the United States, and determined that it had already produced all relevant

7

Swiss-based records and that there were no U.S.-based records responsive to the summons.

**33.** To date, UBS has failed to produce the Singapore-based records relating or pertaining to any accounts maintained by or on behalf of Hsiaw at UBS during the relevant period.

**34.** Even if Singapore's bank secrecy laws, as UBS contends, precludes disclosure of the summoned bank records relating or pertaining to Hsiaw's Singapore account(s), international comity requires that the records be disclosed. The interest of the United States in combating tax evasion by U.S. taxpayers through the use of secret foreign bank accounts substantially outweighs the interest of Singapore in preserving the privacy of its bank customers. As a consequence, judicial enforcement of the summons is required.

**35.** The books, records, papers, and/or other data sought by the summons may be relevant in that it may provide information necessary to resolve certain matters involved with the examination of Hsiaw's income tax liabilities for the tax years 2006 through 2011. See Exh. A, at pp. 5-7, Attachment "B." The summons directed to UBS seeks financial information regarding Hsiaw's relationship with UBS's branch office in Singapore for the period covering January 1, 2001 through December 31, 2011. The information sought by the summons is critical in order that the IRS may determine Hsiaw's correct U.S. tax liabilities for 2006 through 2011.

**36.** The IRS summons demands the production of certain categories of documents pertaining to the accounts that were established and maintained by or for the benefit of Hsiaw at UBS's Singapore branch. See Exh. A, at pp. 5-7, Attachment "B." These documents include foreign bank records, including foreign brokerage or securities account records, that may identify any monies deposited to Hsiaw's Singapore account(s) that constitute undeclared income for the

8

tax years at issue. The documents also are necessary to determine the amount of income earned by Hsiaw's Singapore account(s), including interest, dividends, and capital gains, during 2006 through 2011. To the extent that any securities held in Hsiaw's accounts were sold or otherwise disposed of during the relevant periods, the IRS must determine the basis of such securities, and therefore, it needs access to any Singapore-based bank records covering 2001 through 2011.

37. The testimony, books, records, papers and/or other data sought by the summons are not already in the possession of the IRS.

38. All administrative procedures required by the Internal Revenue Code for issuance of the summons have been followed.

39. No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to Hsiaw for the years under examination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of February, 2016.

JAMES OERTEL
Internal Revenue Agent
Internal Revenue Service

9